The next case is No. 2010-1305 Markem-Imaje Corporation v. Zipher Ltd. Ms. Stoll. May it please the Court. The District Court erred by narrowly constraining the word drive to mean rotate. In the context of this invention, a stepper motor drives a spool whenever it actively applies a force or torque to that spool, regardless of whether that causes the spool to rotate or to resist rotation and hold steady. The District Court failed to recognize this because it ignored key parts of the specification, misapplied this Court's case law prohibiting giving different meanings to the same claim term, and misread the prosecution history. So you would have the word drive mean imparting a force? Yes, a force or torque. And not necessarily rotation? That's right. It does seem that the specification, in almost every respect, talks about rotation of some sort or another. There isn't a whole lot that I could find, and maybe I missed something, but there isn't a whole lot that I can find that talks about applying a voltage to hold the stepper motor in place. Well, let me point you to the places that I think support the construction. So the specification repeatedly states that the tape has to be held steady. And if the tape or ribbon isn't held steady, then the essential feature of maintaining tension will be lost. Now, the specification uses the words driving the ribbon or tape to include more than rotation. And if I could direct your attention to page A112, column 23, lines 60 through 66. And here, 60 through 66. And here, the first sentence says, the ribbon must be accelerated up to a constant speed, advanced at that constant speed, decelerated, and then positioned, in other words, stopped, so as to minimize ribbon wastage. The next sentence is key, and it says driving the ribbon in this manner. It's referring back to those things that were being done to the ribbon. And that includes things other than rotating. It includes accelerating, decelerating, positioning, or stopping. And you're saying the ribbon is on the spool, and so the spool, it's like driving the spool, and deceleration can imply something other than a rotational forward force, right? That's right, Judge Levender. There are two or three other places in this patent. It's in your brief, right? That's right. And then figure 18 of the patent is the one that shows this connection between the tape being on the spool, so that if you're holding the tape steady, you've got to hold the spool steady, or resisting rotation. There's another specific place in this specification that I would direct your attention to, and that's page A101, column 2, lines 52 through 57. And here, the specification indicates that driving the spools includes acting as a brake or resisting rotation, the opposite of rotation. In describing the 558 patent, the specification states that the two DC motors are provided, one driving the take-up spool and the other driving the supply spool. And then, another sentence down, in further describing exactly what's happening when the supply spool motor is driving the spool, it says that it is acting as a brake or resisting rotation. So, you get in trouble because of the where-in clause, right? The where-in exact language is, where-in the controller energizes both said motors to drive the spools in a tape transport direction, right? So, we all know that in tape transport direction, required drive to mean the spools are going this way because they're both engines are being energized, it either has to be turn or rotate, take your pick, right? Yes. And in your reply brief, you admit that with no question. Yes. So, you say, well, don't worry. We've got drive in three places in the claim, drivable, drive, and then in the correction, whatever you want to call it, the add or subtract limitation, you've got drive down there, right? And you say drive's entitled to a broad ordinary meaning, right? But unfortunately, we can't have the broad ordinary meaning in the where-in clause because the text of the claim itself tells you it has to be something other than just broad, right? And then in your reply brief, you cite us cases in which this is AFCON, Wilson, and you missed one, microprocessor enhancement. That's 5-20-13-67, same idea. And where the context of the claim says the claim can't mean what otherwise it's supposed to mean. Then you accept it, right? So, you have to read drive in a tape transport direction in context. The fact that drive has to mean rotate and nothing else in the where-in clause, there's no sin because it's happened before. And the only argument your adversary has against you is the rule that once you have a claim, a term defined in a certain way, it has to be applied consistently. And your explanation that you gave in the reply brief was AFCON and Wilson and the other cases. Did you enlighten Judge Barbadaro with the law so he wouldn't have gotten into this mess? He would understand that there's no particular problem with interpreting the same word in a different way, even inside of one claim? I didn't see any reference. I read the trial transcript, saw Mr. Jakes was talking about driving cars up and down Connecticut Turnpike, but I didn't see any reference to this case law that helped the judge. I don't recall if that case was cited in our briefs. But I do think that it answers the question and it answers it well. But it's your case. Yes. I mean, you dance around in the briefs because you don't really want to confess that drive has to be rotate in one limitation of the claim, but you finally get to it in your reply brief when you then surface these cases that help you. I didn't mean to interrupt your argument. It's helpful. Thank you. It seems to me that drive the spools in a tape transport direction means rotate the spools. Okay? It doesn't hurt you in the other context. It seems to me that that's one argument that the context counts and that things may take on shades of meaning depending on context, even in the same claim. But it seems to me also that if you're arguing that drive means impart a force, that you don't even get into the conflict because impart a force, it seems to me, fits both in the wear and clause and the tape adjustment clause because imparting a force doesn't necessarily require rotation. That is our position. It's just imparting a force. There's a distinction between the Barris reference where you've got one spool being driven and the other is not, whereas here you've got both that are driven in some way in that there's some force being imparted, albeit a rotation force or a stationary force or something. So I think you've got a number of different arguments. I know Mr. Jakes is here, but I didn't think the car analogy was helpful. Well, I think that that was used for the purpose of the judge got confused again about the idea of looking at drive in context. And the example was simply driving a car. But that said, we don't contend that the car is the printer. We've got to look at the specification here in this case. I think it's the district court judge that took that analogy and went away with it in a direction that was not intended. With respect to the other claim construction issue about adding in a limitation about detecting tension, what difference does that make one way or the other? Because the claim does talk about doing something in order to maintain tension. It seems to me there couldn't be an infringing device that didn't detect tension in some respects. I think it might be some attempt to get around the direct or indirect measurement. And I could imagine a situation where the invention would still work. It might not be as robust, but you could just monitor tension. Or it's possible that you might not calculate the length of tape to be added or subtracted based on tension. You might calculate it based on a parameter related to tension. And that might provide an argument. Yes. So I'm not sure where the argument's going. But you're saying basically your invention could guess. That's right. So I could say, well, we think some slack is coming, and we're going to guess how much it is because we've got a very fancy computer program that makes guesses as opposed to actual measurements. That's right. So we're going to have another claim, a dependent claim, in which we have a mandarin device. That's correct. And there's nothing in the case law that should limit our or nothing that should limit, in the Rambus case and other cases. Let me ask this question. Your invention is not inoperable if you lose on the claim construction, right? I mean, if the short of the matter is that you've got to spin both wheels while you're making the adjustment device, that's basically, if I'm not mistaken, what your adversary points to in column 22 from line 66 over on to column 23? Yes. I mean, that's the explanation of the Rolls-Royce operation of the system, right? That's correct. While everything's rolling, it makes the corrections. That's correct. But you pointed out on the same column up at line 15, 16, 17, that the Ford or the Chevrolet model of the invention can actually stop one of the spools and do the correction. That's correct. I just wanted to be sure because I didn't see in your brief, you know, sometimes someone mounts a claim construction argument against you and says she's great, but if you apply that in the invention, the invention won't work. And I didn't see you making an inoperability argument. No, I think that if we were to limit it, then we wouldn't be able to have this particular embodiment work. That's right. The ultimate preferred embodiment of what I'll call the add or subtract calculated length limitation, that's at the bottom of column 22 going over to 23? That's correct. And there's no basis, as we explained in our brief, there's no basis for limiting our claims to that. It's not required that you limit your claims to one embodiment or one that might have certain advantages over another. You can take away from the earlier part of column 22 by saying, well, the invention doesn't have to cover all the embodiments. They recognize that. Okay. Let's hear from the other side. Ms. Stone, we have your rebuttal time remaining. Mr. Glipsenstein. May it please the Court, Your Honors. I wanted to start actually on the issue of whether it's even open to Zypher to argue now that the claim term drive means something different in these two critical clauses in the claim, namely the transport clause, which says to drive the spools, and the tension correction clause, which likewise uses the exact same language, controlled motors to drive the spools. In their opening brief in this case, they stated that during the markment proceedings, this is at page 33, that in connection with a discussion with the Court, in response, quote, Zypher argued that drive has the same meaning throughout the claim, and that the claim phrase in a tape transport direction means something in addition to drive. It does not define drive in all contexts. And then likewise, at page 43 of their opening brief, they state, quote, contrary to the Court's conclusions, the single term drive has the same meaning throughout the claim. So that actually is our view. I'm happy to discuss. What they mean by that is that they thought it really meant control, and control includes rotate when it comes to the transport limitation. Isn't your real argument that they've conceded that you have rotation in the transport, and where it ends off, they conceded that, and therefore, since all the time, every time they use the word, it's got to mean the same thing? That's correct, Your Honor. Okay, so what do you do with their cases? You can either start with EPCON or Wilson or microprocessor, which I'm sure you know about, but they didn't decide. Well, as far as EPCON is concerned, Your Honor, the claim term at issue in EPCON was substantially. The concept I'm talking about, the fact that the same word used either in different claims or in different limitations within the same claim don't necessarily have to have the same meaning. The presumption is that they will. The presumption is that they will, and that there has to be a reason in the intrinsic record not to. The reason can be in the claim itself. The reason can be in the claim. In the context in which it is found. Right, and in this patent, the issue is about, you've got two stepper motors rotating. Let's just look at the transport limitation. Okay, we're in the controlling of both motors to drive the spool in this direction. Because you have the direction where you're going, okay, this way, you're transporting in this direction. The spools, which are driven by the motors, have to go in the same direction. In the context of this patent, can those spools go in any direction other than rotation? In order to achieve transport? No, Your Honor. And in fact. In order for the motors to drive, for the spools to be going in the same direction as the transport? What's the transport direction? So, in the invention, in that claim term. I just want to know in the invention term. That's the linear direction that the tape is moving in the system. It's going one way or the other. Right, so it's moving in one direction or the other. Correct, Your Honor. And there's a passage actually in the specification that explains, I think, the answer to Your Honor's question, which is, how does the spool rotation actually tie into that? The answer is a little bit nuanced because it depends which direction the tape is wound around the wheels, the spools. You can either have the tape wound in the same direction, in which case both spools rotate in the same direction, or they can be counter-rotated, in which case, in order to achieve the tape transport, the spools rotate in the opposite direction. This is actually discussed. And the wheels, the spools actually rotate in opposite directions or snap the tape? No, if the tape is rotated contra to the other spool. This is actually discussed in the specification. I'm not understanding how it works. It looked to me like the spools always got to go in the same direction. Sometimes with more force than others. If, for example, if the tape is wound around the spools in the same direction, so that in order to pay out an inch of tape, you then have to rotate the other one one inch, that is true. However, the spools, the tape could actually be rotated around the spools in the opposite directions, in which case when you rotate, for example, the supply spool clockwise, in order to take up the same amount of space, you have to rotate it, have to rotate the take-up spool counter-clockwise. And this is discussed in actually a very illuminating kind of... I don't understand how that changes in the tape, in the wear-in limitation. Wear-in limitation is a unidirectional. You're either going on Pennsylvania Avenue, you're going this way or that way, and you're going directional one way or the other. And that's correct with regard to the movement of the tape. The issue is in what direction must each of the spools be rotated in order to achieve that cooperative, linear movement of the tape. That's really the issue. The transport direction is a single direction, and both spools have to be driven in that direction in the wear-in limitation. That's correct. So it has to be rotated. That is absolutely correct, Your Honor. That's all I wanted to say. I apologize, Your Honor. Once you get to that stage, I think your case is a eureka. By golly, it means rotate, and so wherever else they use the word drive in the claim, it has to mean rotate, too. Yes, Your Honor. It's a symbol of the canon of claim construction. What I misunderstood was the direction of rotation. Okay, so we're on the same page now. Yes, Your Honor. And so your canon of claim construction is if you use the word drive to mean rotate in one place, it has to mean rotate in the other places. Yes, Your Honor. Now, the case law says that's true unless the case law clearly says if you use the word drive to mean rotate once, it's going to mean rotate every place else, unless the context in which you see the word drive requires a different interpretation for the spec or the file history. You agree with that, right? As a principle of law, yes. That is the claim construction principle. It's their obligation to show something in the record, show a reason to deviate from that. It's in the limitation itself. They're saying the reason why you know drive in the where in the transport limitation, the reason why you know that means rotate is it can't mean anything else. And you told me that. It means drive in the tape transport limitation. So the tape transport limitation says to drive the spools in a tape transport direction. You can basically break this down into two. That means rotate. You told me that ago. The drive piece means rotate. The in a tape transport direction piece tells you which direction you are to rotate the spools. It has to mean rotate. It can't mean anything else. That's correct, Your Honor. And so they used a term with that definition. We're missing each other because what I'm trying to tell you is I'm beginning to think that this is one of those unless cases. Ordinarily, when they say drive means rotate, it's going to mean rotate everywhere they use the word in the claim or in the series of claims. But they now have an explanation as to why they use it differently in the transport. But it's circular, Your Honor. I mean, their suggestion that the final element provides a basis to deviate from this well-settled rule is not supported in the language of the claim. The claim language is exactly the same in both places. And, in fact, when you look at the prosecution record, it was added to this case. There isn't any transport direction in any place else in the claim. Well, there actually is. In the third element of the claim, it does talk about it does discuss that the controller. Are you now talking about the adjustment limitation or whatever? The third element of the claim, Your Honor. A controller adapted to control energization of said two motors such that tape is transported. So there's a movement in at least one direction between spools of tape. Which limitation, Your Honor? The one that begins a controller adapted to control. Energization. To control energization such that tape is transported in at least one direction between spools of tape. So in that piece of the claim, what they're saying is that you've got a verb there, a movement verb, transport, and it tells you what direction the tape is moving. In the third element of the claim, I guess perhaps we agree with Zypher on this. The issue of drive in the fourth element of the claim is broken out so that drive means rotate. And as a consequence, there has to be something in the record that would suggest in some way or actually show more than suggest that when the exact claim term of to drive the spools, when the exact claim term is used in the fifth tension correction limitation, that there's some reason to deviate from the very definition that was used in the fourth claim term. These other cases that they cite are a significant departure from that. You start off with the assumption, don't you, that you start with drivable, which is in the second limitation, two tape spools capable of being drivable. There isn't any reason why that has to be. Let's assume, let's take the wherein the controller energizes the limitation out of the claim for a second. Just erase it. It didn't exist. Now when you read drivable, that's not limited to rotation, is it? No, Your Honor. Not by the spec or the file history or anything else? Correct, Your Honor. And if we have eliminated that wherein clause, then the next time you see drive is in what I'll call the adjustment limitation, drive the spools to add or subtract, there'd be no reason to limit it to rotation, right? Well, The only reason to limit it to rotation is because of the interpretation of drive in the wherein clause that was forced upon the patent. Your Honor, I'm sorry. I misspoke a moment ago. There would be no reason in the text of the claim itself. There certainly is the ordinary meaning of the term drive. There are only two dictionaries in this case. The very first definition of drive, for example, in the Webster's Dictionary and the record in this case, is movement of the issue. So as far as the claim language itself, Your Honor, is concerned, that's correct. But if you actually apply the ordinary meaning of drive, which is to move, so yes, the word drive has to be, the definition has to reflect or understand also the ordinary meaning. So all throughout the claim, yes, the motor, the spools are drivable by the motors. Right, but drive doesn't necessarily mean always motion. You're driving your cattle up from Texas to Kansas to get them fat. You know, you're still driving them when you stop in the evening to sleep. Well, in the context of this invention about printers and all of the places in the specification that use the term drive in many, many contexts to connote motion, when they use a term like drive in a mechanical case of a printer, against the background of many usages in the specification where drive means motion, like they move, they drive the printhead, they drive the optical sensors, and they drive the spools. So against that background, these terms of drive, drivable, should be understood just as a starting point. In the prior art, Barris himself recognizes the difference between driving and driving rotational. So Barris, in this art, they know that you can have driving, which is sometimes rotational and sometimes not. It's right in Barris's claim. Except the motor pools for rotationally driving. Drive doesn't have a limited meaning in this art. Well, the way Barris uses the term drive in discussing his invention, which is at 1169, he actually does draw this distinction. He says, quote, at any given time during normal printing, one of the two motors, 86 or 88, provides the drive torque to pull the ribbon through the print station. While this is happening, the other motor provides the required tension to maintain proper ribbon tracking through its drag action. That's column 4, lines 16 to 21. So actually, when Barris is actually speaking to this issue, he's very careful to delineate between driving as a verb that is rotation in order to move the spools and providing a resistance or drag to that driving motion. So that passage in Barris does support this ordinary meaning of how it's used. But why does drive have to mean rotation when it can also mean, certainly in the context of a stepper motor, some sort of a potential to hold the motor at a certain fixed place? Because that's not how they've used drive in the context of this invention. The term drive has to be given the same meaning throughout this claim. There's nothing in this intrinsic record that would give any reason to deviate from that meaning as in the three different ways in which they've used it in the claim. What meaning would you give the term if we wrote out of the claim the where-in clause? I'm just asking you, what would be the correct interpretation of drivable and drive if we just threw that one troublesome limitation out? It wouldn't be rotate, would it? To be clear, this claim term in question is part of the where-in clause. The where-in clause has two pieces. We're talking about the second piece of the where-in clause. The where-in clause provides for both transport and for tape correction. But if you're just throwing out the first part of the where-in clause, then the argument would be that, number one— No, but what I'm trying to do is to have you look at the claim. We're trying to talk about what drive means to one of ordinary skill in the art, right? And if they never had the entirety of the where-in limitation in there, well, then drivable and then drive the schools to add or subtract wouldn't be limited to rotation, right? Oh, we submitted Wood, Your Honor, for two reasons. We would be missing a piece of the intrinsic record. That's true. However, there are still two very important considerations here. Number one is what does this term mean? And in its ordinary broad meaning, it means move. But moreover, the prosecution history, which we haven't had much of a chance to talk about, the prosecution history shows that these words, to drive the schools, these words were added in order to distinguish Barris. Now, Barris provides a retarding torque to rotation in one of its schools. There was a back-and-forth with the examiner. The examiner indicated that he was reconsidering his rejection over the Barris patent in light of Claim 68, and Claim 68 was amended. And the very words that the examiner added to the claim Well, there's a big argument about whether Claim 68 is amended to get around Barris, right? Well, I mean, there may be an argument. You say yes, and they say no. Well, they say no, and to that point, Your Honor, to respond to something specifically in their gray brief that came up for the first time, you know, in fact, the examiner telephoned Zypher's patent lawyer on the 5th of September, and this is in the appendix at 1009, and said that he has reconsidered the application and was inclined to restate the rejection based on the prior-art Barris patent. And that's significant because the only claim at that point in time that hadn't been rejected or was not currently rejected over the Barris patent was Claim 68, the one that actually issued as the claim in this case. So that's the minor changes to improve the style of the claim, then? No, it's before that, Your Honor. That actually was the September 7th interview. No, on September 5th, the examiner called up their patent lawyer and said, and this is A1009, says, I'm inclined to restate the rejection based on the prior-art. But he had never rejected Claim 68 over Barris. True, but the only claim I don't think so. The only claim at that point in time that was He was restating the rejection over Barris with regard to the earlier claims, not 68. Well, except the very next day when the examiner issued Barris had absolutely nothing to do with adjusting, making this fancy adjustment to the last limitation of the claim. Barris didn't calculate something, but Barris corrected for tension. And I understand that to be Zipher's position, but they acceded to this amendment. They were free to make the argument that Barris, in fact, their Claim 68 distinguished over Barris on other grounds. But they didn't do that. They acceded to an examiner's amendment, an examiner's amendment that is right at the point of this claim construction issue. And at that time in the prosecution, there could be no question that what Zipher was telling the Patent Office was, we are different from Barris because we rotate both motors to move the tape. Barris uses only one motor to rotate. What is the distinction that they energize and Barris does not? That was the distinction that they argued. Barris has one motor that's energized and the other that has a drag force because there's a resistance put across the court. Exactly. And that argument was not enough to persuade the examiner to grant the broad claims. And so at that point in time, they were arguing Okay, if we need to move on as well, I think we'll answer this question and then maybe we need to move on. Thank you, Your Honor. No, you can answer, Judge. I think I know the answer to Judge Clinton's question. I'm sorry, I misheard your honor. He asked where in the record you found support for your last statement. And I apologize. My last statement regarding Regarding Barris? And what was in the examiner's mind? That Barris energizes one spool and then puts a drag force on the other spool but doesn't energize both. My statement was that that argument to distinguish Barris was not sufficient to persuade the examiner to allow the claim. But how do you know that? Because he actually wound up rejecting all of those claims. He had focused on one claim, but that claim apparently was believed adequately to protect that which needed protection. He had, through the course of the exchange with Zyphert's counsel The examiner originally thought that those motors were energized in Barris. That's in A970. And the applicant came back and said, oh, no, no, you don't understand. Only one of the motors is energized. Correct. And that argument ultimately, it's at A1017, where all of those claims, where Zyphert attempted to traverse that rejection, all of those claims were ultimately canceled. So my point is, they were free to make these patentability arguments to the board. They were free to continue prosecuting the claims. But they didn't. The examiner offered them a proposal, and that was to accept narrowing the claims on this issue of adding to drive the schools into the tape transport limit, the tension correction, excuse me, limitation. Tension correction. Tension correction. And what they are trying to do now, quite simply, is through claim construction, is to erase that. And that really is the fundamental problem with their construction. Okay. I think we have the argument. Thank you, Your Honor. Ms. Stone. I'd like to make a quick point, which is about this prosecution history argument. The examiner never rejected the claim in view of Barris, and, in fact, allowed the claim over Barris, and never once indicated that Barris applied or that any prior art would apply to Claim 68. And as I was preparing for this argument, I saw a page. It's page A1019. This is the examiner's interview summary from the day the examiner added the language to drive the schools to the last element of the claim. And you'll see that it says, Claims Discussed, 68. And then it says, Identification of Prior Art Discussed, none. If this claim was amended because of Barris, it wouldn't have said none. If you don't have any further questions. Any more questions, Ms. Stone? Thank you, Ms. Stone. Case is taken under submission.